# In the United States Court of Federal Claims

No. 14-09C
(Filed: September 8, 2016)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * | * | |
| | * | Military Pay; Involuntary |
| ANTHONY REAVES, | * | Separation For Failing Army's |
| | * | Weight Control Program; |
| Plaintiff, | * | Premature Separation; 10 U.S.C. |
| | * | § 1145; Army Regulations 600-9 |
| v. | * | and 40-501; Army Board for |
| | * | Correction of Military Records; |
| THE UNITED STATES, | * | Remand. |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * | * | |

Janine S. Benton, Benton Potter & Murdock, P.C., 400 Maple Ave., So., Suite 210, Falls Church, VA 22046, for Plaintiff.

Benjamin C. Mizer, Robert E. Kirschman, Jr., Steven J. Gillingham, Matthew P. Roche, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, P.O. Box 480, Ben Franklin Station, Washington, D.C. 20044, for Defendant. Captain Daniel D. Hill, Military Personnel Litigation Branch, U.S. Army Litigation Division, 9275 Gunston Road, Suite 3000, Fort Belvoir, VA 22060, Of Counsel.

___

**OPINION AND REMAND ORDER**
___

**WILLIAMS**, Judge.

This matter comes before the Court on the parties' cross-motions for judgment on the Administrative Record ("AR"). Plaintiff challenges the decision of the Army Board for Correction of Military Records ("ABCMR"), denying his request for a medical disability discharge, in lieu of his involuntary separation for failing the Army's Weight Control Program. Plaintiff contends that he had undiagnosed sleep apnea while on active duty and that he should have been discharged for disability due to that medical condition. For the reasons stated below, the Court grants Plaintiff's motion in part and remands this matter to the ABCMR.

**Findings of Fact**[1]

On March 21, 1997, Plaintiff enlisted in the Regular Army for a four-year term, and was assigned to the United States Army Medical Research Institute of Infectious Diseases at Fort Detrick, Maryland, where he was a medical specialist. AR 000157, 000215. Plaintiff served on active duty until March 3, 2000, when he was discharged from the Army because he failed the Army's Weight Control Program. AR 000215.

At the time of his enlistment in 1997, Plaintiff's weight and body fat content were recorded, and he was categorized as being "in compliance with Army Standards." AR 000171. Over two years later, on November 9, 1999, Plaintiff was referred to the Army's Weight Control Program. AR 00084. At the time of his referral, Plaintiff weighed 206 pounds - - 37 pounds over the maximum allowable weight of 169 pounds for his height and age. AR 000083; Army Reg. 600-9 at 7. Eight days after his entry into the Weight Control Program, Plaintiff was referred to a nutritionist and requested a consultation plan to lose weight. AR 000082. The medical personnel who saw him wrote that "all other means [for weight loss had] failed to date." Id.

On March 3, 2000, Plaintiff was discharged from active duty due to "weight control failure." AR 000215. Plaintiff's discharge form did not list his weight at the time of discharge. Id.[2] Plaintiff was discharged prior to the expiration of his term, and was automatically transferred to the inactive component of the Army Reserve, the Individual Ready Reserve ("IRR"). AR 000215. On February 26, 2001, Plaintiff requested that he be transferred to the active component of the Army Reserve, specifically to the 48th Combat Support Hospital at Fort Meade. AR 000150-51. His request was granted the following day, but Plaintiff failed to report for duty and was returned to the inactive component of the Reserve, the Individual Ready Reserve, on September 10, 2001. AR 000149-51.

Over six years after his discharge, Plaintiff petitioned the Department of Veterans Affairs ("VA"), claiming that his sleep apnea was connected to his active duty.[3] In ruling on Plaintiff's request, the VA considered Plaintiff's service treatment records, his VA Application for Compensation and Pension Benefits, a Veterans Claims Assistance Act notification letter, treatment reports from "Internal Medicine Associates" and the "Fredrick Sleep Disorder Center," and statements from Plaintiff, his wife, and his active-duty superior officers, Wendell Chestnut and Demetrius Young. AR 000144-45. The VA also considered the opinion of Dr. James A.

---

[1] The findings of fact are derived from the AR. Additional findings of fact are in the Discussion.

[2] The last record of Plaintiff's weight in the AR prior to his discharge occurred on February 9, 2000, during Plaintiff's medical visit for a sore throat and cough. Plaintiff's weight at that time was 215 pounds. AR 000075.

[3] Plaintiff originally submitted his request to the VA on June 28, 2006. AR 000144.

Mitchell, a physician with the Southern Regional Area Health Education Center, who examined Plaintiff and sent his opinion to the VA on April 3, 2008. Id.[4]

In its report, the VA referenced Plaintiff's January 3, 2007 personal statement recounting that, while on active duty, Plaintiff "kept falling asleep during periods of inactivity such as watching the phones or doing paperwork," which his superiors "felt was just laziness." AR 000145. Additionally, the VA referenced statements by two of Plaintiff's superior officers, dated March 16, 2007, and February 8, 2007.[5] On April 4, 2008, the VA issued its rating decision finding a service connection for Plaintiff's sleep apnea "with an evaluation of 50 percent effective June 28, 2006." AR 000144.

On December 5, 2010, Plaintiff requested that the ABCMR review his separation action, arguing that he had undiagnosed sleep apnea while on active duty and that he should have been discharged for disability due to that medical condition. AR 000026.[6] Plaintiff contended that his sleep apnea would have been discovered if he had been given a medical examination prior to separation as required under Army Regulation 600-9. AR 000026-27. This regulation requires a medical evaluation "for soldiers being considered for separation due to failure to make satisfactory progress in a weight control program . . . ." Army Reg. 600-9 at 4. Plaintiff states that no examination was done. Defendant argues that the November 9, 1999 examination, which occurred before he entered into the Weight Control Program and almost four months before his discharge on March 3, 2000, qualified as his pre-separation medical evaluation required by Army Regulation 600-9.

On June 30, 2011, the ABCMR determined that Plaintiff was not entitled to a medical disability retirement, finding that there was no evidence that his separation action had been performed incorrectly or that he was unable to perform his active duty obligations. AR 000037-40. The ABCMR noted that Plaintiff reported that he did not have trouble sleeping in his September 30, 1999 annual physical, and that there was "no evidence of record which shows [Plaintiff] was diagnosed with sleep apnea or any mental or medical condition prior to his release from active duty on 3 March 2000." AR 000039. The ABCMR concluded:

> 3. In the absence of evidence to the contrary, it must be presumed [Plaintiff's] separation action was administratively correct and in conformance with applicable regulations.

---

[4] The record does not contain Dr. Mitchell's opinion or a record of his examination of Plaintiff.

[5] Plaintiff appended these statements to his cross-motion for judgment on the AR, and Defendant moved to strike them. The Court granted Defendant's motion on June 22, 2016, as these statements had not been considered by the ABCMR, and were unsworn and generated years after the occurrences they described.

[6] Plaintiff originally filed this request on August 4, 2008, but it was denied because it did not contain the appropriate documentation, such as his Army medical records or his discharge packet. AR 000026. On December 5, 2010, Plaintiff filed this second, identical, request that the ABCMR review his separation, provided his Army medical records, and noted his unsuccessful attempt to locate his Discharge Packet. Id.

      4. There is no evidence to show [Plaintiff] could not perform his duties while on active duty. Therefore, there is insufficient evidence to show a medical retirement was warranted.

AR 000040.

In reaching its conclusions, the ABCMR reviewed Plaintiff's medical records, his military personnel file, the 2008 Veterans Affairs' rating decision, and the opinion of Army Review Physician, Dr. Gilbert Teague.[7] AR 000037-38, 000041. Dr. Teague "completed a preliminary review of the case to identify the medical issue(s) and make a recommendation regarding the need for an outside advisory opinion, specifically, an opinion from the Office of the Surgeon General (OTSG)." AR 000041. Dr. Teague reviewed "multiple (annual) physical exams, and a lot of unrelated laboratory values and clinical notes." Id. Dr. Teague opined that Plaintiff's claim that he had sleep apnea while on active duty was unsubstantiated, citing his annual physical performed on September 30, 1999, in which Plaintiff "denied any problems sleeping." AR 000041. In the form memorializing Plaintiff's September 1999 physical, Question number 11 asked "have you ever had or have you now . . . frequent trouble sleeping," and Plaintiff checked the box "no." AR 000088. This is the last record of a physical examination prior to Plaintiff's entry into the Weight Control Program on November 9, 1999. Dr. Teague concluded that there was "no indication that [Plaintiff] was unable to perform his duties or that he was unable to perform basic Solider skills," and that there was "no need for an opinion from OTSG [Office of the Surgeon General]." AR 000041.

Of note procedurally is that Plaintiff's Discharge Packet is missing. The Board had initially declined to consider Plaintiff's application for review due to his failure to provide his Army medical records and his Discharge Packet. AR 000026. Plaintiff subsequently provided his medical records from December of 1996 until February of 2000, but failed to locate his Discharge Packet, despite making a number of inquiries to possible custodians of his records. Id.[8] Although the ABCMR accepted Plaintiff's second request for review of his separation action, the Board acknowledged that the Discharge Packet was not part of the evidence reviewed, stating "[w]e are not the custodian of Mr. Reaves' military personnel record . . . [and] cannot explain why there is no separation packet filed in his record." AR 000030. The Board further noted that although the "facts and circumstances surrounding his release from active duty [were] not available," Plaintiff's discharge certificate showed that he was "honorably released . . . for weight control failure." AR 000039. The Board concluded that there was "no evidence to show [Plaintiff] could not perform his duties while on active duty," and that there was "insufficient evidence to show a medical retirement was warranted." AR 000040.

---

[7]     Dr. Gilbert Teague, who holds the rank of Colonel in the Medical Corps, is a medical advisor to the Army Review Boards Agency. AR 000041. The Army Review Boards Agency "has oversight authority for the ABCMR." AR 000011.

[8]     Plaintiff contacted the National Personnel Records Center ("NPRC"), the United States Army Human Resources Command ("HRC"), the interactive Personnel Electronic Records Management System ("iPERMS"), personnel at Fort Detrick, and the VA in an effort to locate his Discharge Packet.

4

On February 23, 2012, Plaintiff filed a request for reconsideration of the ABCMR's June 30, 2011 decision. AR 000029. On October 9, 2012, the ABCMR returned Plaintiff's request for reconsideration without action, stating that Plaintiff had not "provided any additional evidence or a new argument." AR 000008-9. The Board stated that it would not consider any further requests for reconsideration, and noted that Plaintiff could seek relief "in a court of appropriate jurisdiction." AR 000009. This decision served as the "final administrative action taken by the Secretary of the Army." AR 000001.

## Procedural History

On January 2, 2014, the United States District Court for the Eastern District of North Carolina transferred Plaintiff's case to this Court under 28 U.S.C. § 1631. The Administrative Record, certified on February 28, 2014, by Lieutenant Colonel Joseph Masterson, Chief, Military Personnel Litigation Branch, contains 228 pages of Plaintiff's Army personnel record, medical records, applications to the ABCMR, including Plaintiff's VA rating decision, and correspondence, but does not contain his Discharge Packet or any performance evaluations of his active duty service.

On September 22, 2015, this Court determined that the Administrative Record was incomplete, and ordered Defendant to conduct a search for Plaintiff's Discharge Packet, stating:

> Defendant shall file a Notice to the Court identifying the custodian(s) of Plaintiff's Discharge Packet and Plaintiff's job performance evaluations and the repositories where these documents would have been maintained in the ordinary course of business. These custodians shall search the identified repositories for Plaintiff's Discharge Packet, job performance evaluations, and any other documents related to Plaintiff's weight or weight loss program while he served on active duty.
>
> Defendant shall provide a sworn declaration from any custodian(s) of records explaining what searches were conducted. Defendant shall file any relevant documents located in the searches, including Plaintiff's Discharge Packet, any DA Form 5500s, weight loss performance reports, or correspondence by unit commanders regarding his weight control.

Order 4 (Sept. 22, 2015).

On November 19, 2015, Defendant filed its response, stating the Government was "unable to locate [Plaintiff's] discharge packet or other records related to his weight-loss program . . . that [were] not already contained in the administrative record." Def.'s Notice 1 (Nov. 19, 2015).[9] Defendant contacted the following record repositories in attempting to locate Plaintiff's Discharge Packet: the Army Human Resources Command ("HRC"), the National Archives and Records Administration's National Personnel Records Center ("NPRC"), Fort

---

[9] Defendant noted that while soldiers who held the same rank as Plaintiff, Private First Class, do not undergo annual performance evaluations, it requested that the record repositories perform a search for any job performance evaluations, but none were located. Def.'s Notice 1 (citing Hiza Decl. ¶ 6).

Detrick (Plaintiff's active duty station), the 48th Combat Support Hospital at Fort Meade (Plaintiff's reserve unit), the VA's Regional Office in Atlanta, Georgia, and the National Personnel Records Unit in St. Louis, Missouri. Id. at 2-3. Defendant attached declarations from the cognizant custodians of records, and they testified that they searched paper and microfiche repositories, as well as the interactive Personnel Electronic Records Management System ("iPERMS") and the VA's Veterans Benefit Management System, but were unable to locate any of Plaintiff's records that were not already included in the AR. Id. at 2-5.

## Discussion

### Standard of Review

Motions for judgment on the AR are governed by Rule 52.1 of the Rules of the United States Court of Federal Claims. Under RCFC 52.1, the parties are limited to the AR, and the Court makes findings of facts as if it were conducting a trial on a paper record. See Bannum, Inc. v. United States, 404 F.3d 1346, 1356 (Fed. Cir. 2005); Kennedy v. United States, 124 Fed. Cl. 309, 329 (2015); Boyle v. United States, 101 Fed. Cl. 592, 595-96 (2011). When cross-motions for judgment on the administrative record have been filed, the Court "considers 'whether given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record.'" Volk v. United States, 111 Fed. Cl. 313, 325 (2013) (quoting DMS All-Star Joint Venture v. United States, 90 Fed. Cl. 653, 661 (2010)).

The party challenging the decision of a correction board has "the burden of demonstrating by cogent and clearly convincing evidence that the correction board acted arbitrarily, capriciously, [or] contrary to law, or that its determination was unsupported by substantial evidence." Arens v. United States, 969 F.2d 1034, 1037 (Fed. Cir. 1992) (citing Wronke v. Marsh, 787 F.2d 1569, 1576 (Fed. Cir. 1986), cert. denied, 479 U.S. 853 (1986)). "Substantial evidence requires 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" O'Brien v. Office of Pers. Mgmt., 144 F.3d 1458, 1461 (Fed. Cir. 1998) (quoting Universal Camera Corp. v. Nat'l Labor Relations Bd., 340 U.S. 474, 477 (1951)).

### Remand is Warranted

Plaintiff argues that the ABCMR's decision was arbitrary and capricious because Plaintiff's separation was rushed and he was not given an opportunity to comply with the Army's body fat standards. Pl.'s Mot. for J. on the AR 12. Plaintiff states that because Army health care personnel never examined him to determine whether his failure to meet the body fat standards was the result of a medical condition, there was no evidence to support his claim for a medical disability retirement. Id. Soldiers being considered for separation for failing the Army's Weight Control Program would have the following documentation in their personnel record, in addition to that generated during their time in the program: a letter from the soldier's commander notifying the soldier that separation proceedings were being considered under Army Regulation 635-200, chapter 5-15, the soldier's written response to the separation notification, and documentation of the medical evaluation required when the soldier failed the program. Army Reg. 600-9 at 4-5. None of this documentation is in the record before this Court. Hiza Decl. ¶ 4 (Nov. 19, 2015); Daniels Decl. ¶ 4 (Nov. 18, 2015); Bullen Decl. ¶¶ 5, 7-8 (Nov. 18, 2015); Pratt Decl. ¶¶ 16-17 (Nov. 19, 2015).

6

This lack of evidence was the linchpin of both the ABCMR's denial of Plaintiff's claim and Defendant's argument in this action. The ABCMR found that there was "no evidence of record and [Plaintiff] provided no evidence which shows he was diagnosed with sleep apnea prior to separation." AR 000040. Defendant submits that the ABCMR's decision was reasonable as the record contains no evidence either that Plaintiff was diagnosed with sleep apnea prior to his discharge or that Plaintiff's alleged sleep apnea rendered him unfit for duty.

The lack of record evidence, however, is not a problem of Plaintiff's making. Although the Army is charged with keeping medical records, there is no documentation of Plaintiff's medical condition either while he was in the Weight Control Program or at the time of his discharge. See Army Reg. 600-8-104 at 24. The Army's unfortunate recordkeeping snafu - - which resulted in the lack of evidence - - does not constitute a valid reason for denying Plaintiff's claim. Instead of foisting adverse inferences for the lack of records on Plaintiff, the Army must acknowledge its part in mishandling Plaintiff's separation. In short, the Army failed to follow its own regulations in affording Plaintiff a medical evaluation and in effecting his discharge. Defendant violated Army Regulation 600-9 first by discharging Plaintiff before he even completed the Army's Weight Control Program and again in failing to perform a medical evaluation at the time of this premature discharge. If a soldier was being considered for separation for failing the Army's Weight Control Program, the commander was required to order a medical evaluation. Army Reg. 600-9 at 4. Army Regulation 600-9 provides:

> *g.* <u>After</u> a period of dieting and/or exercise for 6 months, soldiers who have not made satisfactory progress [3 to 8 pound goal] and who still exceed the screening table and body fat standards will be processed as follows:
>
> (1) If health care personnel determine that the condition is due to an underlying or associated disease process, action prescribed in *d* above will be taken [prescription of treatment, hospitalization, or determination if condition is medically disqualifying].
>
> (2) If no underlying associated disease process is found to cause overweight condition, the individual will be subject to separation.

Id. at 5 (emphasis added). In discharging Plaintiff before he completed six months in the Weight Control Program and without performing a medical evaluation prior to discharge, the Army violated this regulation.

Defendant claims that Plaintiff's examination referring him to the Weight Control Program in November of 1999, five months before he was discharged, qualified as his pre-separation/post Weight Control Program evaluation and fulfilled Army regulatory requirements. The Court rejects this argument. How could a medical determination conducted <u>before</u> a soldier entered into the Weight Control Program be used to gauge Plaintiff's progress during the Weight Control Program and form the basis for discharging Plaintiff for failing a Program he had not yet begun? The Army violated Regulation 600-9 when it failed to retain Plaintiff in the Weight Control Program for the full six months and failed to perform a medical evaluation upon Plaintiff's completion of the Program prior to discharging Plaintiff for failing the Weight Control

Program.  Whether Plaintiff had an underlying condition that caused him to fail the Weight Control Program was never assessed at the required time during Plaintiff's active duty.[10]

In sum, the Army prematurely and arbitrarily discharged Plaintiff for failing weight standards one month before he completed the Program without the requisite medical evaluation. Army Reg. 600-9 at 4 (requiring a medical evaluation "for soldiers being considered for separation due to failure to make satisfactory progress in a weight control program").  Plaintiff should have had a medical examination in April of 2000, but instead he was prematurely discharged in March of 2000.  Nor was Plaintiff given a medical examination after six months of being in the Weight Control Program to gauge his progress in that program as required by Army Regulation 600-9.

Plaintiff claims that he had sleep apnea which caused his failure in the Weight Control Program, but this was not evaluated either during the months he spent in the Weight Control Program or prior to his discharge.  As such, the proper remedy in this circumstance is to direct the Army to afford Plaintiff that medical evaluation nunc pro tunc.  The Tucker Act grants this Court the authority to "remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just." 28 U.S.C. § 1491(a)(2) (2012); see also Stuart v. United States, 123 Fed. Cl. 413, 422-23 (2015).  Remand "for additional investigation or explanation" is appropriate:

> [i]f the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it . . . .

Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985).

Although years have passed since Plaintiff's discharge, this Court is not prohibited from ordering a medical evaluation nunc pro tunc.  The military has been required to reconsider and make disability-at-time-of-separation determinations years after a service member's discharge. See Walters v. United States, 358 F.2d 957, 962 (Ct. Cl. 1966) (stating that the plaintiff "may prevail if he can show that if the complete facts concerning his condition had been known at [the time of discharge] he would have been entitled to retirement by reason of physical disqualification under the pertinent laws and regulations.  To this end, reference must of necessity be made to his subsequent medical history insofar as it sheds light on the nature of his physical condition while in service") (internal citations omitted); Wells v. United States, 46 Fed. Cl. 178, 186 (2000) (remanding to the Army's Personnel Command to further explain and supplement its line of duty determination for failure to comply with the governing regulations, specifically for failure to obtain medical records and witness statements); Walden v. United States, 22 Cl. Ct. 532, 540 (1991) (ordering the ABCMR to "thoroughly review the available evidence to determine the extent of plaintiff's disability at the date of discharge" on remand).

---

[10]  Nor does the record contain any evidence reflecting Plaintiff's progress in the Weight Control Program, as the record does not contain any of the monthly weight reports or body fat measurements that Plaintiff should have undergone during his time in the program. Army Reg. 600-9 App. B, at 20, 23.

## Conclusion

1. Plaintiff's Cross-Motion for Judgment on the Administrative Record is **GRANTED IN PART**.

2. The Court **REMANDS** this matter to the Army Board for Correction of Military Records for further administrative action pursuant to Rule 52.2 and orders:

   a. The Army Board for Correction of Military Records is directed to provide Plaintiff with a Medical Evaluation Board as if he had been afforded that MEB on March 3, 2000, the date he was prematurely discharged for failing the Army's Weight Control Program. If the MEB finds that Plaintiff failed to meet retention standards due to an underlying medical condition, it shall refer his case to a Physical Evaluation Board. The MEB and PEB shall apply the version of the applicable Army Regulations, including 600-9, in effect on March 3, 2000. The MEB and PEB shall take account of the fact that Plaintiff was not permitted to complete the Army's Weight Control Program.

   b. The MEB and PEB will perform their routine processes with regard to Plaintiff's case, despite the retroactive nature of the determination. The MEB and PEB shall document the rationale for their respective determinations.

   c. The PEB shall decide whether Plaintiff was fit for continued service as of March 3, 2000. If the PEB determines that Plaintiff was no longer fit for duty and he was eligible for disability benefits, the ABCMR shall correct Plaintiff's record consistent with the MEB and/or PEB's findings.

   d. Defendant shall file the MEB and/or the PEB decisions within 180 days of this Order.

3. The case is **STAYED** for the duration of remand proceedings.

s/Mary Ellen Coster Williams  
**MARY ELLEN COSTER WILLIAMS**  
**Judge**